UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES of AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRELL LUCKETT,<br><br>Defendant. | Case No. 16-cr-00200-WHO-1<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 15 |

Defendant Darrell Luckett moves to suppress the fruits of a search of his person conducted by officers in the Tenderloin area of San Francisco. Dkt. No. 15. Luckett argues that the officers did not have "reasonable suspicion" that he was currently engaged in criminal activity sufficient to justify their stop and search of him. He also argues that reasonable suspicion was required, despite the fact that he was on probation and subject to a warrantless or suspicionless search term. Having considered the undisputed facts and the arguments of counsel, I conclude that the officers had adequate reasonable suspicion to justify the stop and search of Luckett. Therefore, I do not need to reach the question of what level of suspicion is required to conduct a probation search.

**BACKGROUND**

**I.    THE SEARCH**

On March 20, 2016, police officers Michael Cunnie and Steve Orengo were on patrol in a marked police car near Turk and Leavenworth Streets in San Francisco. Declaration of Geoffrey Hansen, Ex. A. (Dkt. No 16-1) Incident Report, Officer Cunnie Narrative.[1]  Cunnie states that the

---

[1] The factual statements from the police Incident Report are relied on by both sides. Defendant does not concede the veracity of the statements contained therein, but does not dispute them for

area of Turk and Leavenworth is known to be a high crime area and he has made dozens of narcotics arrests in that area. *Id*. At approximately 8:08 p.m., Cunnie saw defendant Darrell Luckett, whom Cunnie knew from "multiple Police interactions." *Id*.; *see also* Declaration of Michael D. Cunnie (Dkt. No. 17-1) ¶¶ 7-9. Cunnie knew that Luckett was on probation. Incident Report; Cunnie Decl. ¶ 5. Cunnie and Luckett made eye contact and then Luckett "abruptly" stopped walking, turned around, and began walking in the other direction at a greater rate of speed. Incident Report; Cunnie Decl. ¶ 12. Luckett walked into a liquor store; based on Luckett's reaction upon seeing the officers, Cunnie believed Luckett had entered the store in an attempt to evade police contact or dispose of contraband. Incident Report; Cunnie Decl. ¶¶ 12-13. The officers drove around the block and, as they reapproached the intersection of Turk and Leavenworth, they saw Luckett walking on Turk Street and pulled their vehicle up alongside him. Incident Report; Cunnie Decl. ¶ 14.

Cunnie reported that as Luckett noticed the officers' car beside him, he began to walk faster, and twisted the right side of his body away from the officers "as though he was trying to conceal the right side of his body in order to hide something." Incident Report; Cunnie Decl. ¶ 14. Cunnie suspected, based on his training and Luckett's behavior, that Luckett possessed contraband. *Id*. Cunnie asked Luckett "what he was up to" and Luckett responded that he was on his way to the store. Incident Report; Cunnie Decl. ¶ 15. When Cunnie responded that he had just seen Luckett leave a store, Luckett began walking at a faster rate of speed. *Id*. Cunnie asked Luckett to stop walking because he had to talk with him, but Luckett continued to walk away. *Id*. The officers exited the car and Cunnie informed Luckett that he was being detained. *Id*. Luckett continued to walk away and Cunnie grabbed him by the arm. *Id*. Luckett was told to place his hands on his head so he could be searched for weapons. *Id*. Luckett began to raise his hands but as Cunnie reached toward Luckett's waistline, Luckett pulled his arms down, began to crouch, and pulled away from the officers' grasps. *Id*. The officers, fearing he might be reaching for a gun, pushed Luckett to the ground, and when Luckett raised himself up on his hands, Orengo used a

---

purposes of this motion. Mot. 2, n.1.

forearm strike to force Luckett back to the ground. *Id*. Luckett was handcuffed, although still struggling. *Id*. A search of Luckett disclosed that Luckett was carrying a pistol in a black canvas bag under his sweatshirt. *Id*.; Cunnie Decl. ¶ 17. Luckett was arrested and charged with possession of a loaded firearm and resisting arrest. *Id*.

## II.     LUCKETT'S RECORD

On March 16, 2013, Luckett was arrested on charges of domestic violence, aggravated assault, and resisting arrest. Ex. A to Oppo. The incident report alleges that Luckett had kicked the door of his spouse's home (he was separated from his spouse at the time). *Id*. When his spouse opened her door, Luckett entered and physically assaulted her. *Id*. As a result of the incident, on August 2, 2013, Luckett pleaded guilty to robbery in violation of Cal. Penal Code § 459, and was sentenced to three years of probation. Hansen Decl., Ex. B. Since that incident, Luckett has been arrested on the following charges, battery on a police officer (June 2013); second degree burglary (July 2013); inflicting corporal injury on a spouse or cohabitant (October 2013); second degree burglary (February 2014); second degree burglary (May 2014); first degree burglary (November 2014); second degree burglary (February 2015); assault with a deadly weapon (May 2015); and corporal injury on a spouse or cohabitant (July 2015). Oppo., Ex. C. There is no evidence that Luckett was convicted on any of those charges. However, in light of those arrests, Luckett had his terms of probation altered four times. *Id*., Ex. E.

## III.    OFFICER CUNNIE'S KNOWLEDGE OF LUCKETT AND THE TENDERLOIN

Cunnie testifies that he has worked in the Tenderloin since April 2015, and has been involved in over a hundred arrests while working in that area. Cunnie Decl. ¶ 2. He first encountered Luckett in the summer of 2015 and learned at that time that Luckett was on probation with a suspicionless-search condition. *Id*. ¶ 5. Cunnie also reviewed Luckett's criminal history then, and remembers that Luckett had a large number of convictions and had been arrested for carrying a concealed weapon. *Id*. ¶ 6. Cunnie had conducted probation searches of Luckett four or five times before, and Luckett was always cooperative, never jumpy, and never tried to evade Cunnie. *Id*. ¶ 7. In one or two of those searches, Cunnie found traces of heroin residue in Luckett's possession, although the amounts did not "justify" arrest. *Id*. ¶ 8.

Cunnie often saw Luckett "loitering" in the Tenderloin area near Turk and Leavenworth. *Id.* ¶ 9. According to Cunnie, that specific area is "infamous" for its narcotics trade and is referred to as "Pill Hill," as well as being known for a high degree of violent crimes, including crimes involving firearms. *Id.* ¶ 10.

## DISCUSSION

### I. REASONABLE SUSPICION

An officer has reasonable suspicion when he "is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000). "The reasonable-suspicion standard is not a particularly high threshold to reach. 'Although . . . a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (quoting *United States v. Arvizu*, 534 U.S. 266 (2002)); *see also United States v. Edwards*, 761 F.3d 977 (9th Cir. 2014) ("'Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" (quoting *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)).

In determining whether officers had reasonable suspicion, courts must "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citation and quotation marks omitted). This approach allows officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available" to them. *Id.* Nonetheless, an officer may not rely upon a mere hunch to justify an investigatory stop. *Id.* at 274. Rather, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. at 21. A seizure may only be justified by reference to factors that were present up to the time the

4

stop was made. *Montero–Camargo*, 208 F.3d 1122, 1130 n.11 (9th Cir. 2000).

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). However, an individual's presence in an area of criminal activity may support the existence of reasonable suspicion when combined with other facts. *Id.*; *see also United States v. Smith*, 633 F.3d 889, 893–94 (9th Cir. 2011) (officers may take into account the "context in which suspicious activity occurs"). For instance, evasive behavior, furtive movements, and suspicious eye contact are all relevant factors in evaluating whether the totality of the circumstances supports reasonable suspicion. *Wardlow at 124* ("nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *Montero–Camargo*, 208 F.3d at 1136 (eye contact, or the lack thereof, when evaluated in light of the circumstances, "may be considered as a factor establishing reasonable suspicion"). Prior criminal history is also a permissible consideration "as part of the total calculus of information" in determining reasonable suspicion. *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (internal quotation omitted).

## II. LUCKETT'S BEHAVIOR PRIOR TO THE STOP

The government argues that reasonable suspicion existed to stop Luckett based on the following: (i) the officers were patrolling a "high-crime" area known for narcotics and weapons crimes; (ii) Cunnie knew Luckett had committed crimes in the past (including violent crimes) and knew he was on probation; (iii) Cunnie had personally found small amounts of drug residue on Luckett in the past, raising the possibility that he was involved in drug transactions and armed; (iv) Luckett's behavior at the time of the stop was nervous and evasive, contrary to Cunnie's prior observations and interactions with Luckett.[2]

Defendant attempts to counter each of these factors, pointing out that each one – by itself –

---

[2] The government relies more particularly on: (i) Luckett's look of surprise or nervousness when he made eye contact with Cunnie; (ii) Luckett turned around abruptly and started quickly walking away; (iii) Luckett went into a store, placing him out of sight of the officers; (iv) Luckett gave an implausible answer when questioned by the officers; (v) Luckett ignored the officers' orders to stop; (vi) the placement of Luckett's arms and body suggested he was hiding something. Oppo. 8-9.

would be insufficient to support reasonable suspicion. On that latter point, Luckett is correct. However, as discussed above, the factors must considered together under a totality of the circumstances approach. Under that approach, I conclude that the officers had reasonable suspicion to stop and search Luckett.

As to whether or not the intersection of Turk and Leavenworth is a "high-crime" area with significant known narcotics activity and weapon possession arrests, Luckett presents evidence on Reply that the Tenderloin is not a significantly "high-crime" area compared with other areas of San Francisco. *See* Declaration of August Sommerfield (Dkt. No. 22). While the Ninth Circuit has cautioned courts to carefully examine descriptions of "high-crime" areas, to make sure the descriptions are limited to specifically circumscribed areas and those descriptions are supported with evidence, Cunnie's declaration does exactly that. *But see United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000) (cautioning against overbroad and unsubstantiated characterizations of areas as "high-crime"); *United States v. Conerly*, 75 F. Supp. 3d 1154, 1164 (N.D. Cal. 2014), appeal dismissed (Apr. 10, 2015) (rejecting assertion of "high-crime" area supported by analysis of large (not circumscribed) districts within a city, and where more narrowly drawn evidence showed only that there "were just thirteen arrests for the sale of narcotics within a six block radius surrounding the intersection in the last year.").

Cunnie asserts not only that the specific area of the Tenderloin at issue (Turk and Leavenworth) is "high-crime," but it is "infamous" for narcotics activity and weapons-related crimes. Cunnie Decl. ¶ 10. He also testifies that he personally has been involved in over 100 arrests while working in the general Tenderloin area in just over one year. *Id*. ¶ 10. Luckett's generalized evidence – which does not distinguish between different types of police incidents (*e.g*., automobile or home break-ins versus drug or weapon possession arrests) – does not undermine Cunnie's specific and detailed description, backed up by personal knowledge. I would have found that the officers had reasonable suspicion regardless of their evidence concerning crime in the area where Luckett was detained, but I agree with the government that the evidence is sufficient to consider it as a factor in the totality of the circumstances.

As to Cunnie's knowledge that Luckett was on probation, had been arrested for crimes in

the past, and had been found in possession of heroin, defendant argues that information is irrelevant to whether the officers had reasonable suspicion that Luckett was currently engaged in illegal activity. While not itself determinative, officers' knowledge of a suspect's prior criminal history can provide part of the basis for reasonable suspicion. *Burrell v. McIlroy*, 464 F.3d 853, 860 n.3 (9th Cir. 2006) ("Although a prior criminal history cannot alone establish reasonable suspicion or probable cause to support a detention or an arrest, it is permissible to consider such a fact as part of the total calculus of information in these determinations.").

As to Luckett's conduct when he saw the officers and how he responded to the officers, Luckett argues that any perceived nervousness or jumpiness on Luckett's part could just as reasonably be explained by Luckett's fear he would be stopped and searched without cause and potentially arrested (as he had been in the past by these officers). But that does not account for Cunnie's characterization of Luckett's behavior as being materially different this time, as opposed to all of their prior interactions, including interactions which post-dated prior searches and arrests.

While defendant attempts to undermine Cunnie's characterization of Luckett's abruptly turning away from the officers and heading into a store and later telling the officers that he was headed to the store as "evasive," the facts taken in their totality could support reasonable suspicion. Luckett did not explain why he was headed to an *additional* store or otherwise respond to Cunnie's statement that they just saw him enter a store. The point is not that Luckett was required to respond (he was not), but the absence of an explanation leaves the officers' characterizations that Luckett was being "evasive" unchallenged.

While defendant is correct that his failure to stop when asked to do so by the officers cannot, standing alone, create reasonable suspicion, Luckett's behavior was (again) contrary to his prior behavior and is a factor that can be considered. Finally, while the unchallenged observations that Luckett was turning his body away from the officers and suspiciously placed his arms in a way indicating he was hiding something would be insufficient to support reasonable suspicion on their own, those observation support reasonable suspicion here. *See, e.g., United States v. Oglesby*, 597 F.3d 891, 894–95 (7th Cir. 2010) (defendants had "angled his body away from" officers to obscure right side of body from their view, which the officers' training had taught them

was potentially done to keep a weapon hidden or out of reach).

## CONCLUSION

In sum, given Cunnie's description of Luckett's conduct from the time Luckett first saw the officers up to and including his detention, Cunnie's knowledge of Luckett's criminal history, and the difference in Luckett's conduct in prior interactions with Cunnie, the officers had reasonable suspicion under the totality of the circumstances to stop and search Luckett. The location of the arrest would further support that suspicion. Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED**.

Dated: September 9, 2016



WILLIAM H. ORRICK
United States District Judge